Hat, Judge,
delivered the opinion of the court:
This is a suit brought by the plaintiffs against the United States to recover three items: $15,000, $5,889.35, and $113,-216, making in the aggregate the sum of $134,105.35.
The plaintiffs, citizens of the United States, were at the times hereinafter mentioned the owners of a ship called the Betsey Ross. On August 30, 1917, the plaintiffs entered into a charter party with J. J. Moore & Company, of San Francisco, for the transportation of a cargo of lumber from Chemainus, British Columbia, to Melbourne, Australia. One of the conditions of said charter party was as follows: “This charter is subject to charter for return cargo being-signed in New York promptly after advice that this charter has been signed here.”
Simultaneously with said lumber charter plaintiffs entered into a charter party with the Mutual Chemical Company of America at New York which provided that said ship on her return voyage should transport a cargo of chrome ore from the Island of New Caledonia, 800 miles east of Australia, to New York or Baltimore at the rate of $60 per ton of 2,240 pounds.
On November 26, 1917, about the time of the departure of said ship upon her1 outward voyage, the plaintiffs through their agents applied to the United States Shipping Board for the approval of the charter for the return voyage of said ship, and received approval as follows:
*8 New YoRK, November 86, 1917.
Messrs. D. B. DearborN & Co.,

8 Bridge Street, N. Y.

American schooner Betsey Boss.
DeaR Síes : We -have yonr letter1 of November 26th in connection with charter of above vessel for a cargo of ore •from New Caledonia to New York or Baltimore.
This charter is hereby approved.
Yours very truly,
(Sgd.) WeldiNG Ring, Ghairrnxm of the 0bartering Committee.
The Betsey Ross completed her outward voyage and arrived at the port of Melbourne on March 9, 1918. On April 10,1918, the ship was ready to sail for New Caledonia to load her cargo of chrome ore.
On April 5, 1918, the United States Shipping Board, the United States War Industries Board, and the British and Australian Government entered upon a discussion as to the desirability of requiring American-owned vessels in Australian ports to return to an American port with cargoes of wheat, but no decision was arrived at until May 9, 1918.
In the meantime the master of the Betsey Ross was refused clearance papers from the port of Melbourne upon the ground that the United States had requested that the Betsey Ross should make her return voyage with a cargo of wheat instead of chrome ore, and it was not until May 9, 1918, that the master of the vessel was advised that he was required to load a cargo of wheat.
The plaintiffs were also notified, and their contract with the Mutual Chemical Company of America was rendered impossible of performance. On May 15, 1918, having had submitted to them by the United States Food Administration Grain Corporation the so-called “Australian Government Form Wheat Charter,” they signed said charter dated May 15, 1918. Under the provisions of said charter plaintiffs were to be paid for the transportation of wheat at the rate of 125 shillings per ton of 2,240 pounds. The ship after clearing from Melbourne docked at Williams-town in the vicinity of Melbourne, and on May 29, 19Í8, the *9 Betsey Boss sailed from Williamstown for New York with the cargo of wheat, 2,144 tons.
After the ship arrived at New York the plaintiffs were paid for the transportation of said cargo of wheat the sum of $63,784, the same being in full payment under the provisions of the contract.
Had the plaintiffs been permitted to perform their contract with the Mutual Chemical Company of America they would have earned the sum of $177,000.
The ship was idle 30 days in the port of Melbourne by reason of the fact that the United States Shipping Board requested that she be held until it could make up its mind whether the ship should make her return voyage loaded with wheat or chrome ore.
The claim which is sued upon here was presented to the United States Shipping Board for an award of just com-¡íensation, and on February 17,1920, the said board made an award disallowing the claim.
The act of June 15, 1917, 40 Stat. 182, confers upon the President the power and authority to suspend and cancel contracts with respect to the operation of ships. The President delegated this power to the United States Shipping Board Emergency Fleet Corporation as he was authorized to do under the act.. The act further provides that when contracts are suspended or canceled the United States shall make just compensation therefor to be determined by the President, and if the amount thereof so determined by him is unsatisfactory to the person entitled to receive it such person shall be paid 75 per cent of the amount so determined, and shall be entitled to sue the United States to recover such further sum as added to said 75 per cent will make up such amount as will be just compensation therefor, and the act conferred upon this court jurisdiction to hear and determine such cases.
In the case at bar the plaintiffs made their claim for just compensation to the United States Shipping Board Emergency Fleet Corporation, which board on February 17, 1920, disallowed the claim, whereupon the plaintiffs brought this suit.
*10 The facts are that the United States Shipping Board suspended the contract of the plaintiffs for a period of 30 days while the said board was deliberating the question whether the ship of the plaintiffs and all other American ships in the ports of Australia should or should not on their return voyages to the United States be loaded with cargoes of wheat; and the plaintiffs’ ship by reason of these deliberations was forced to remain idle in the port of Melbourne, Australia, for the period of 30 days.
At the expiration of the said 30 days, on May 9, 1918, the plaintiffs were required by the United States Shipping Board Emergency Fleet Corporation to take on a cargo of wheat for its return voyage to the United States, and by this act the said board canceled the contract which the plaintiffs had with the Mutual Chemical Company of America to transport a cargo of chrome ore from the Island of New Caledonia to New York or Baltimore.
It is not denied that the contract under consideration is within the provisions of the act June 15, 1911, and that the power and authority of the President in relation thereto was duly delegated to the United States Shipping Board Emergency Fleet Coi’poration.
The act provides for compensation in case the Government shall exercise the power conferred as to suspending and canceling contracts. Having the right to suspend and cancel the contract, it must be held that the Government must pay to the plaintiffs the just compensation for the loss which they incurred by reason of the suspension and cancellation of their contract. The United States. Shipping Board having refused to pay to the plaintiffs any compensation the case is before us, and we must determine the just compensation due to the plaintiffs from the evidence in the record, and in so determining that compensation we have endeavored to give to the plaintiffs the sum of money which they lost by reason of such suspension and cancellation, and to place them in as good a position pecuniarily as if the contract had not been suspended or canceled.
We have not allowed the item of $5,889.35, for the reason that the’plaintiffs used the material in the transportation of *11 the cargo of wheat, and it does not appear just what the plaintiffs lost bj reason of the change made in the vessel. We can not base a judgment upon guess work. We have not allowed the item of $15,000 because, while the plaintiffs were delayed thirty days, yet they were relieved from performing their' ore contract, and all the expenses incident thereto; and the plaintiffs being thus relieved can not claim the damages for delay and take advantage of the relief which they obtained by reason of not having to perform their contract to go to New Caledonia for the ore.
The Government took no evidence in this case, and the facts are undisputed.
We are of opinion that the plaintiffs are entitled to the sum set out in the conclusion of law, and judgment will be entered accordingly.
Moss, Judge; Booth, Judge; and Campbell, Chief Justice, concur.
Geaham, Judge, dissents.